UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

      v.                       CASE NO. 6:23-cr-00234-CEM-EJK

JIHAD WILLIAM MORALES

**<u>NOTICE OF MAXIMUM PENALTIES ELEMENTS OF OFFENSE,
PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS</u>**

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, hereby files this Notice of Maximum Penalties, Elements of Offense, Personalization of Elements and Factual Basis, stating as follows:

<u>ESSENTIAL ELEMENTS</u>

The essential elements of the violation of Count One, 18 U.S.C. § 1956(h), conspiracy to commit concealment money laundering, are as follows:

| | |
|---|---|
| <u>First</u>: | two or more people agreed to try to accomplish a common and unlawful plan to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and |
| <u>Second</u>: | the Defendant knew about the plan's unlawful purpose and willfully joined in it |

The elements of Counts Two through Eight are:

| | |
|---|---|
| <u>First</u>: | the Defendant knowingly conducted or tried to conduct a financial transaction; |
| <u>Second</u>: | the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity; |

<u>Third</u>:     money or property did come from an unlawful activity, specifically computer fraud and wire fraud; and

<u>Fourth</u>:     the Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

For Counts Nine through Eleven, the term "structure" means to deposit, withdraw, or otherwise participate in transferring a total of more than $10,000 in cash or currency using a financial institution or bank by intentionally setting up or arranging a series of separate transactions, each one involving $10,000 or less, in order to evade the currency-reporting requirement that would have applied if fewer transactions had been made.  The elements of Counts Nine through Eleven are:

<u>First</u>:     the Defendant knowingly structured or helped to structure a currency transaction;

<u>Second</u>:     the purpose of the structured transaction was to evade the transaction-reporting requirements;

<u>Third</u>:     the structured transaction involved one or more domestic financial institutions; and

<u>Fourth</u>:     the Defendant structured the transaction while committing the money laundering conspiracy set forth in Count One.

<u>PENALTY</u>

The offenses charged in Count One through Nine each carry a maximum sentence of 20 years' imprisonment, a fine of not more than $500,000, or twice the value of the monetary value or instrument involved, whichever is greater, a term of

supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Counts Nine through Eleven each carry a maximum sentence of 10 years' imprisonment, a fine of not more than $500,000, or twice the gross gain or gross loss from the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

Additionally, the defendant must forfeit property, pursuant to 18 U.S.C. § 982(a)(1) and 31 U.S.C. § 5317(c)(1)(A), as outlined in the Indictment.  Among the items that will be forfeited is the $20,012 in proceeds the defendant obtained as a result of his participation in this money laundering conspiracy.

<u>PERSONALIZATION OF ELEMENTS</u>

As to Count One, at some point in time from on or about February 25, 2021 through on or about February 24, 2022:

<u>First</u>:      Did two or more people agreed to try to accomplish a common and unlawful plan to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)?

<u>Second</u>:   Did you know about the plan's unlawful purpose and willfully joined in it?

3

For Counts Two through Eight, on each of the dates set forth in the

Indictment,

First:       Did you knowingly conduct or try to conduct a financial transaction?

Second:    Did you know that the money or property involved in the transaction were the proceeds of some kind of unlawful activity?

Third:      Did the money or property come from an unlawful activity, specifically computer fraud and wire fraud?

Fourth:    Did you know that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds?

For Counts Nine through Eleven, on the dates set forth in the Indictment,

First:       Did you knowingly structure or help to structure a currency transaction?

Second:    Was the purpose of the structured transaction to evade the transaction-reporting requirements?

Third:      Did the structured transaction involve one or more domestic financial institutions?

Fourth:    Did the currency transaction with the domestic financial institution(s) further another Federal crime?

FACTUAL BASIS

Starting in March 2021, the Internal Revenue Service – Criminal Investigation

("IRS") and the Federal Bureau of Investigation ("FBI") investigated a ring of

conspirators involved in laundering the proceeds of computer fraud and business

email compromise schemes by routing payments to fake businesses in the Middle

District of Florida and transferring those funds to offshore accounts in China. This

investigation revealed the following true facts about this conspiracy and JIHAD

WILLIAM MORALES's participation in this conspiracy:

### *Identification of MORALES, LABOUR, Morales Primitive, Inc. and Wells Fargo Account #7601*

In the course of an ongoing money laundering investigation, the IRS and FBI

identified a bank account held by a business at a Wells Fargo in Deltona, Florida in

March 2021. Bank records, surveillance video, and spending records allowed the

IRS and the FBI to identify MORALES and CRISTIAN RODRIGUEZ LABOUR

("LABOUR") and their use of that account to effect money laundering through that

account.

LABOUR was released from incarceration on or around February 3, 2021.

LABOUR recruited MORALES into the scheme at some point in early February

2021. LABOUR and MORALES knew each other from being incarcerated at a

"half-way house" together. On or before February 15, 2021, MORALES gave

LABOUR and his conspirators his personal identifiers and LABOUR and his

conspirators incorporated the business Morales Primitive Inc. with the state of

Florida. The formation documents for this business identify MORALES as the

registered owner and his home address in the Middle District of Florida as the

principal place of business. Morales Primitive Inc. was a fake business with no

legitimate or lawful purpose.

In this scheme, MORALES created a bank account for the fake business

Morales Primitive Inc. When large sums of money were transferred into that

account, MORALES would quickly transfer most of those funds to offshore accounts held by businesses in China and would withdraw money from the accounts. MORALES would then keep a portion of the withdrawn money and give a portion of the withdrawn money to LABOUR and others within the conspiracy.  During these transactions, MORALES acted at the direction and supervision of LABOUR and other conspirators.

LABOUR and his conspirators incorporated the fake business Morales Primitive Inc. for MORALES using MORALES's identifiers on February 15, 2021. Ten days later, on February 25, 2021, MORALES opened a business checking bank account ending in 7601 at a Wells Fargo in Deltona, Florida.  MORALES told the bank that "Morales Primitive, Inc." was in the business of "Manufacturing Industrial Laundry Machines," had two employees, and $40,000 in gross annual sales.  This was false. Morales Primitive, Inc. was a fake business with no legitimate or lawful purpose.

Six days after it was opened, MORALES, LABOUR and others used Wells Fargo Account #7601 to launder more than a half million dollars in two weeks. Among other things, the bank records reveal that MORALES initiated the following wire transfers and withdrawals using the Wells Fargo Account #7601 for the fake business Morales Primitive, Inc.:

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|------|--------------|------|--------------|--------------------|--------------|
| 3/1/21 | $198,685.00 | T.C. | | | |
| 3/2/21 | | | $88,500.00 | 1 in Zhejiang, China | |

| Date | Incoming Wire | From | Outgoing Wire | To Offshore Account | Withdrawals |
|------|------|------|------|------|------|
| 3/2/21 | | | | | $10,000.00 |
| 3/2/21 | | | | | $10,000.00 |
| 3/3/21 | | | $48,000.00 | 2 in Weifang, China | |
| 3/3/21 | | | | | $15,000.00 |
| 3/4/21 | $195,000.00 | T.C. | | | |
| 3/4/21 | | | | | $300.00 |
| 3/5/21 | | | | | $9,500.00 |
| 3/5/21 | | | | | $7,000.00 |
| 3/5/21 | | | $98,500.00 | 2 in Weifang, China | |
| 3/8/21 | | | $75,000.00 | 3 in Weifang, China | |
| 3/8/21 | | | | | $1,000.00 |
| 3/9/21 | $177,900.05 | T.C. | | | |
| 3/10/21 | | | | | $9,500.00 |
| 3/10/21 | | | | | $6,000.00 |
| 3/10/21 | | | $96,850.00 | 2 in Weifang, China | |
| 3/11/21 | | | $61,500.00 | 3 in Weifang, China | |
| 3/11/21 | | | | | $2,000.00 |
| 3/11/21 | | | | | $250.00 |
| 3/12/21 | $196,900.05 | T.C. | | | |
| 3/14/21 | | | $94,660.00 | 2 in Weifang, China | |
| 3/15/21 | | | | | $9,500.00 |
| *Totals* | *$768,485.10* | | *$563,010.00* | | *$80,050.00* |

Wells Fargo closed this bank account due to suspected fraud and T.C. was able to retrieve approximately $90,000 in unauthorized wires. MORALES and Morales Primitive Inc. had no legitimate business with T.C. or the businesses holding Offshore Account 1 in Zhejiang, China, Offshore Account 2 in Weifang, China, or Offshore Account 3 in Weifang, China. In the above transactions, MORALES knew that outgoing wire transfers were intended to conceal the proceeds of unlawful

activity and the withdrawals from the account were structured to avoid the $10,000 currency reporting requirement.

In addition to the above listed withdrawals and outgoing wires, LABOUR and MORALES used the debit card associated with this fake account at high end clothing stores and other retailers and to rent a Porsche through Turo. MORALES was captured on surveillance cameras at Wells Fargo locations making withdrawals and initiating wires:

3/10/21:



3/5/21:



3/13/21:



None of the wires from T.C. were intentionally directed to Morales Primitive Inc. and T.C. had no legitimate business relationship with Morales Primitive Inc. Employees of T.C. reported that their business had been the victim of a business email compromise scheme and that someone had accessed T.C.'s email system to falsely request the unauthorized wires be sent to Morales Primitive Inc. at Wells Fargo Account #7601.

On August 4, 2021, the IRS and FBI executed a federal search warrant at MORALES's residence in Deltona, Florida. MORALES was not at home during the execution of the search warrant. The search warrant yielded various pieces of

clothing that MORALES had worn while conducting business using the fake bank account. On August 6, 2021, the FBI and IRS conducted a telephonic interview with MORALES. MORALES claimed to have had his identity stolen by an individual named "Jose" and stated that he had had opened up Morales Primitive Inc. to do landscaping. During the interview, MORALES falsely denied knowing LABOUR, then falsely claimed "I've seen him before" but didn't know him well. The interview concluded soon thereafter.

In all of the conduct outlined above, MORALES agreed with others to try to accomplish an unlawful plan to conduct, or attempt to conduct, financial transactions, knowing that the money involved in the scheme involved proceeds of some sort of unlawful activity. In addition, MORALES knew that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds, and the plan did, in fact, involve proceeds of computer fraud and wire fraud. In withdrawing money from the fake business bank accounts, MORALES knew the withdrawals from the account were structured to avoid the $10,000 currency reporting requirement and he committed those withdrawals in the course of participating in the conspiracy to commit concealment money laundering. MORALES agreed with others to accomplish this common and unlawful plan and MORALES knew the unlawful purpose of the plan when he voluntarily joined in it. The total amount of cash withdrawals from accounts associated with MORALES is $80,050.00. Based upon evidence obtained during the investigation, the best readily provable estimate of the amount that MORALES received in compensation for

participating in this conspiracy is 25% of the cash withdrawals, or $20,012. The readily provable amount of money laundered through the entire conspiracy outlined above was $3,323,941.  The conspirators unsuccessfully attempted to launder another $6,145,877 through the conspiracy outlined above.


Respectfully submitted,

ROGER HANDBERG
United States Attorney


By:    *s/ Dana E. Hill*
       Dana E. Hill
       Assistant United States Attorney
       USA No. 189
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone:   (407) 648-7500
       Facsimile:   (407) 648-7643
       E-mail:       Dana.Hill@usdoj.gov

**U.S. v. MORALES**                      **CASE NO. 6:23-cr-00234-CEM-EJK**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 24, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael Nielsen, Esq.

<u>*s/ Dana E. Hill*</u>
Dana E. Hill
Assistant United States Attorney
USA No. 189
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:  (407) 648-7643
E-mail:       Dana.Hill@usdoj.gov